**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**DONNA EICHNER,**

        **Plaintiff,**        **CIVIL ACTION NO. 13-CV-11629**

    **vs.**

                      **DISTRICT JUDGE GERALD E. ROSEN**

**COMMISSIONER OF**         **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**
_____/

<u>**REPORT AND RECOMMENDATION**</u>

      Plaintiff Donna Eincher seeks judicial review of Defendant the Commissioner of Society Security's determination that she is not entitled to Social Security benefits for her physical impairments under 42 U.S.C. § 405(g).  (Docket no. 1.)  Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 9) and Defendant's Motion for Summary Judgment (docket no. 11). The Motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket no. 2.)  The undersigned has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

**I.**     **RECOMMENDATION:**

      The Court recommends that Plaintiff's Motion for Summary Judgment (Docket no. 9) be GRANTED IN PART AND DENIED IN PART and that Defendant's Motion for Summary Judgment (Docket no. 11) be DENIED. This matter should be remanded pursuant to 42 U.S.C. § 405(g) for proper consideration of the medical opinions as discussed herein.

II.     **PROCEDURAL HISTORY:**

Plaintiff filed an application for Disability Insurance Benefits with a protective filing date of July 7, 2010, alleging that she had been disabled since May 14, 2010, due to seropositive rheumatoid arthritis and degenerative disc disease. (*See* TR 61.) The Social Security Administration denied benefits. (*Id.*) Plaintiff requested a *de novo* hearing, which was held on July 20, 2011, before Administrative Law Judge (ALJ) Patricia S. McKay, who subsequently found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy.  (TR 70.)  The Appeals Council declined to review the ALJ's decision (TR 1), and Plaintiff commenced this action for judicial review. The parties then filed their instant Motions.

III.    **PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE, AND VOCATIONAL EXPERT'S TESTIMONY**

A.     **Plaintiff's Testimony**

Plaintiff was 46 years old at the time of the administrative hearing and 45 years old at the time of alleged onset. (*See* TR 61, 83.) At the time of the hearing, Plaintiff was married and lived at home with her husband. (TR 83.) She testified that she had completed high school, one year of college, and vocational training for dental assisting. (TR 84.) Plaintiff testified that she worked in the dental field for about a year, until 1988, when she gave birth to her son. (TR 85.) Plaintiff told the ALJ that she remained un-employed for a few years and went back to the dental field for a short time following her unemployment. (*Id.*) Plaintiff testified that from 1996 to the date of the administrative hearing, she had worked in customer service, in restaurants, as a seasonal cashier, for a jerky packaging company, and for an automotive company as a sonic welder. (*Id.*)

Plaintiff testified that she stopped working as a sonic welder because she had a "huge flare-up" of her arthritis and experienced swelling of her hands and knots in her feet; both would get hot and tingle. (TR 87, 88.) She testified that she took medical leave from the jerky company and went back part-time, temporarily, after discovering she could no longer perform the work; there was a lot of lifting, repetitive work and standing involved. (TR 89.)

Plaintiff testified that on an average day she woke up between 6:00 and 7:00 a.m. (TR 95.) She testified that she usually sat by the computer and that she waited for her husband to wake up and make breakfast. (*Id.*) She told the ALJ that sometimes she took a short walk and that it usually took a couple hours for her to be mobile in the morning because of the stiffness. (*Id.*) Plaintiff testified that she sometimes went on errands with her husband and that sometimes she stayed home. (*Id.*) She testified that she usually napped from around 12:30 p.m. until about 3:00 p.m. (*Id.*) She testified that she just rested for the remainder of the day and took baths with Epsom salt. (*Id.*)

Plaintiff testified that her husband did the laundry, and she occasionally helped with the cooking and dishes. (TR 84.) She testified that her mother vacuumed, dusted, and mopped. (TR 96.) She testified that she drove a couple times a week. (TR 94.)

Plaintiff testified that she has rheumatoid arthritis of her feet and hands, which caused them to tingle and fall asleep periodically during the day. (TR 99.) She testified she got knots that moved around her body. (*Id.*) She testified that her L4 and L5 vertebrae were compressed and bulging and that she had arthritis in her lower back. (*Id.*)

Plaintiff testified that she gave herself an Enbrel injection in the stomach on Mondays. (TR 101.) She testified that on Wednesdays she took Methotrexate. (*Id.*) She noted that the side effects from the medications are nausea and headaches, which subside after a day, or sometimes longer.

(*Id.*) Plaintiff testified that the side effects of the medication are what prevent her from working. (*Id.*)

Plaintiff testified that she has shingles and had to stop physical therapy and medication when she

was diagnosed. (TR 100.)

**B.      Medical Record**

Defendant asserts that the ALJ "adequately presented Plaintiff's testimony and opinion

evidence." (Docket no. 11 at 7.) Plaintiff sets forth a detailed discussion of her medical record,

which is consistent with the record as discussed by the ALJ. (Compare *Id.* with docket no. 7-2.)

Therefore, the Court hereby incorporates by reference the medical record as set forth by Plaintiff as

follows:

> Dr. Henein began treating Ms. Eichner on February 10, 2010 (Tr. 250). Ms.
> Eichner reported that she started having intermittent swelling of her hands two years
> previous, but over the previous two-and-a-half months she had markedly severe
> symptoms with severe hand pain and severe pain in her hips, fee, and elbows. She also
> reported morning stiffness for one hour, some back pain, and numbness and tingling in
> the hands. Dr. Henein reviewed lab studies that showed a positive rheumatoid factor. *Id.*
> An examination revealed mild Raynaud's of the hands bilaterally, slight swelling of the
> proximal interphalangeal joints of the hands, mildly decreased range of motion of the
> wrists with tenderness in the wrists, marked tenderness over the elbows, marked
> tenderness of the metatarsal phalangeal joints of the feet, and some pain with motion of
> the right knee (Tr. 251). Dr. Henein diagnosed seropositive rheumatoid arthritis,[7]
> paresthesias[8] of the upper and lower extremities, and degenerative joint disease of the
> lumbosacral spine. The doctor requested updated blood testing and x-rays. She
> recommended an injection of Kenalog[9] and prescribed a Prednisone taper and
> Methotrexate. *Id.*

> On March 15, 2010, Ms. Eichner stated that she did not start Methotrexate
> because she was concerned about the side-effects (Tr. 248). She reported some
> improvement on Prednisone and following the Kenalog injection. Dr. Henein stated that
> there was marked improvement in the tenderness and swelling of the hands and feet. The
> rheumatologist encouraged her to start Methotrexate or another similar drug. *Id.* At a
> follow-up on May 17, 2010, Ms. Eichner was seen after her first injection of Enbrel (Tr.
> 247). She stated that the injection gave her more energy, but caused some nausea and
> headache. Ms. Eichner stated she was working only four days a week and having tingling
> sensations in her legs. An examination revealed minimal synovitis[13] of the hands and
> wrists. Dr. Henein diagnosed seropositive rheumatoid arthritis and paresthesias of the
> lower extremities. She continued use of Enbrel and prescribed Vicodin. *Id.*

4

On July 20, 2010, Ms. Eichner reported increased fatigue and anxiety (Tr. 286). She felt her flare-up of arthritic symptoms were not as bad because she stopped working and learned to take rests between activities. Her hips and hands remained painful with one hour of morning stiffness. Dr. Henein's examination revealed tenderness and slight synovitis of the proximal interphalangeal joints and metacarpal phalangeal joints of the hands, as well as decreased motion of the left wrist. Enbrel was continued. *Id.* At the next visit, on October 25, 2010, it was noted that Ms. Eichner had started Methotrexate in addition to her Enbrel (Tr. 325). Despite this, she had feet, hip, and hand pain, and felt fatigued "all the time." There was 1+ synovitis of the proximal interphalangeal joints of both hands with tenderness in the wrists, tenderness in the hips, and tenderness of the knees. Dr. Henein diagnosed rheumatoid arthritis, long-term use of high-risk medications, and major fatigue. Blood testing was requested. *Id.*

Dr. Henein completed a Multiple Impairment Questionnaire on October 25, 2010 (Tr. 297-304). She diagnosed seropositive rheumatoid arthritis, paresthesias of the upper and lower extremities, and fatigue (Tr. 297). Clinical findings included swelling of the hands, decreased range of motion in the wrists, fatigue, and generalized stiffness. *Id.* Dr. Henein cited to blood testing that revealed positive rheumatoid factor and other abnormalities that supported her findings (Tr. 298). Ms. Eichner's primary symptoms were fatigue, morning stiffness, anxiety, and hand/foot pain. *Id.* Her pain was rated as moderate to moderately severe, 6 to 7 on a 10-point scale, and her fatigue as moderate, 6 on a 10-point scale (Tr. 299). Dr. Henein stated that her symptoms and limitations began around February 2010 (Tr. 303).

Dr. Henein opined that Ms. Eichner was able to sit 1 hour total and stand/walk 1 hour total in an 8-hour workday (Tr. 299). She also needed to get up and move around every 30 minutes when sitting and not sit again for 30 minutes (Tr. 299-300). Ms. Eichner could frequently lift and carry 5 pounds and occasionally 10 pounds (Tr. 300). However, she had significant limitations performing repetitive lifting due to shoulder pain and hand pain and swelling. *Id.* Dr. Henein reported that Ms. Eichner was markedly limited (defined as effectively precluded) from using her upper extremities for grasping, turning, and twisting objects and performing fine manipulations (Tr. 300-301). She was moderately limited (defined as significantly limited, but not totally precluded) from reaching (Tr. 301). Ms. Eichner's pain, fatigue, or other symptoms were frequently severe enough to interfere with her attention and concentration (Tr. 302). It was noted that she is not a malingerer. She required unpredictable breaks to rest during an 8-hour workday. *Id.* Ms. Eichner had good days and bad days (Tr. 303). Dr. Henein opined that she would be absent from work, on the average, more than three times a month as a result of her impairments or treatment. *Id.*

On May 4, 2011, Ms. Eichner stated that her back was "giving out" (Tr. 324). She had a series of spinal blocks, but they only helped for five days. Ms. Eichner stated that her symptoms increased when she started working at a job three days a week. Dr. Henein's examination revealed tenderness of the upper and lower extremities. The doctor diagnosed active rheumatoid arthritis, bilateral foot pain, long-term use of high-risk

medications, and degenerative joint disease of the lumbosacral spine with chronic back pain and fatigue. She was advised to increase her dose of Methotrexate and Dr. Henein performed a Kenalog injection. *Id.*

(Docket no. 9-2 at 1-5.)  The Court has, however, conducted an independent review of Plaintiff's medical record and will incorporate comments and citations as necessary throughout this Report and Recommendation.

### C.    Vocational Expert's Testimony

The ALJ first asked the VE to describe the Plaintiff's past work activity from a vocational standpoint. (TR 112.) The VE testified that Plaintiff's "[p]ast work as a waitress. . . . [and] . . . [p]ast work as a hotel clerk [is] . . . semi-skilled." (*Id.*) The VE further testified that Plaintiff's "[p]ast work as a warehouse supervisor. . . . [and as a] dental assistant [is] skilled work." (*Id.*)

The ALJ then asked the VE to consider a hypothetical person of Plaintiff's age, education, and past relevant work experience with the capacity to perform a full range of light exertional work but with limitations in activities such as

climbing stairs or ladders . . . crouching . . . crawling . . . kneeling . . . stooping or bending on an occasional basis, as opposed to more often, such as frequently or constantly[;] . . . [avoiding] continuous exposure to temperature extremes[;] . . . [avoiding] continuous exposure to using power or vibrating tools[;] . . . [avoiding] continuous exposure to humid or wet work environments[;] . . . [use of] bilateral upper extremities for handling, fingering and feeling activities on a frequent basis, as opposed to a constant basis . . . .

(TR 113-114.) The VE testified that such a person would be able to perform Plaintiff's past work as a hotel clerk. (TR 114.) The ALJ asked whether there were any other jobs that such an individual could perform. (*Id.*) The VE testified that such an individual could perform a position as "an inspector, which is light an unskilled. . . .[and also] a packager." (*Id.*)

The ALJ asked the VE to assume that the individual needed to perform work primarily seated, with the ability to stand for extended periods of time. The ALJ questioned how that would affect the positions, and whether the needs could be accommodated. (*Id.*) The VE testified that the inspector position would still be available, that the opportunity for work as a hotel clerk would be reduced by half, and the position as a packager would be eliminated. (TR 116-117.)

The ALJ asked the VE whether the individual being limited to work that was "simple, routine, or repetitive" because of side effects from medication, would affect any of the light jobs. (TR 117.) The VE testified that the hotel clerk position would be eliminated. (*Id.*)

The ALJ questioned if the hypothetical individual needed to be recumbent during the day to manage pain, how it would affect the employment positions. (TR 118). The VE testified that "[it would] be preclusive to employment." (*Id.*)

The ALJ then asked the VE to assume that Plaintiff's testimony was credible. (*Id.*) The VE testified that an individual with such limitations could not perform Plaintiff's past work or any other work with which the VE is familiar. (*Id.*)

Plaintiff's attorney asked the VE if one were to miss more than three days of work consistently, over one month, as a result of side effects from medication, what affect it would have on performing the jobs listed. (TR 119.) The VE testified that it would be preclusive to employment. (*Id.*) Plaintiff's counsel asked the VE if one needed additional breaks, at least one or two, throughout the day for fifteen-to-thirty-minute intervals at unpredictable times, what affect it would have on employment. (*Id.*) The VE again testified that it would be preclusive to employment.

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the insured requirements of the Social Security Act through March 31, 2012, and that the Plaintiff had not engaged in substantial gainful activity since May 14, 2010. (TR 63.) The ALJ found that Plaintiff suffered from severe "rheumatoid arthritis involving the upper and lower extremities . . . with mild Reynaud's in the bilateral hands . . . and degenerative disc disease of the lumbar spine." (*Id.*) The ALJ then found that Plaintiff does not have an impairment that meets or equal one of the listed impairments. (TR 64.)

The ALJ determined that Plaintiff had the residual functional capacity to perform sedentary work with the following limitations:

> occasional climbing of stairs and ladders, crouching, crawling, kneeling, stooping/bending[;] . . . [occasional] use of power tools and vibrating tools[;] . . . frequent use of bilateral upper extremities for handling, fingering, and feeling[;] . . . performed primarily in a seated capacity but allows opportunities for positional changes, as desired.

(*Id.*) In reliance on the VE, the ALJ determined that Plaintiff is unable to perform any past relevant work. (TR 68.) The ALJ then found that there are numerous jobs in the national economy that Plaintiff is able to perform, and therefore, she was not disabled from May 14, 2010 through the date of the ALJ's decision. (TR 69-70.)

## V.      LAW AND ANALYSIS

### A.      Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it

is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

## B.    Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)    Plaintiff was not presently engaged in substantial gainful employment; and

(2)    Plaintiff suffered from a severe impairment; and

(3)    the impairment met or was medically equal to a "listed impairment;" or

(4)    Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

9

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

C.    **Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at

10

*8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Plaintiff argues that this matter should be reversed or remanded under sentence four for the calculation of benefits or for a new hearing based on Plaintiff's contention that the ALJ failed to follow the treating physician rule and failed to properly evaluate Plaintiff's credibility.

### 1.    Plaintiff's Credibility

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997).  But credibility assessments are not insulated from judicial review.  Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence.  *Id.*  An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not enough to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.*  "The adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *See id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements."  20 C.F.R. § 416.929(c)(2).  The ALJ must

consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain.  *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

Plaintiff asserts that the ALJ's findings do not provide substantial evidence to support the conclusion that Plaintiff's testimony is not credible. (Docket no. 9-2 at 16.) Plaintiff further contends that the ALJ created inconsistencies in the record that do not exist. (*Id.* at 17.) Defendant contends that the ALJ correctly noted Plaintiff's inconsistencies in her decision and that the ALJ's weighing of Plaintiff's credibility should be given its due deference. (Docket no. 11 at 18.)

Here, the ALJ found that Plaintiff was not wholly credible due, in part, to the following inconsistencies:

> The medical records show that the [Plaintiff] was laid off from her last job . . . not due to her medical conditions as she indicated in her Disability Report.
>
> During questioning by the undersigned, the [Plaintiff] testified that she sits in a recliner and is on the computer spending an hour and a half daily surfing, e-mailing, and playing games. However, she told her representative that she is on the computer for only one half hour at a time.
>
> The [Plaintiff] testified that when her fingers lock up, it takes hours to a whole day to resolve. When questioned further, she testified that typically it takes two hours for her fingers to subside.
>
> Despite her testimony to the contrary that she is not responsible for the cooking, cleaning and housework, she told the physical therapist that she is responsible for all the cooking, cleaning and housework and enjoys gardening and yard work, which currently gives her problems.
>
> .   .   .

12

> . . . The [Plaintiff's] testimony that she requires opportunities to be recumbent during the day for pain management purposes due to the medication side effects where medications require her to be extremely drowsy and require napping on a regular basis is not fully supported by the objective medical records in evidence.

(TR 66, 68.) Plaintiff contends that there are explanations for each of the inconsistencies in the record. (Docket no. 9-6 at 16.) For example, Plaintiff asserts that the amount of time she spends on her laptop can be explained by her testimony that she "only use[s] it for 30 minutes at a time." (*Id.*) Thus, she argues, this is not inconsistent with the statement that Plaintiff spends "and hour and a half daily" using her laptop. (TR 66.) Plaintiff's argument is logical, but it is open for interpretation. And even if the Court would decide the matter differently, the undersigned finds that the ALJ's findings are supported by substantial evidence. Therefore, the undersigned finds that the ALJ's credibility determination is sufficiently specific to make clear to Plaintiff and the Court the weight the ALJ gave to Plaintiff's statements and the reasons for that weight. Plaintiff's Motion should be denied with respect to this issue.

### 2.     The Medical Opinions of Record

The ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record.  20 C.F.R. § 404.1527(c)(2).  It is equally well settled that the ultimate issue of disability is reserved to the Commissioner and not the treating or examining physician.  *Kidd v. Comm'r*, 283 Fed. Appx. 336, 341 (6th Cir. 2008).  Thus, when a medical or non-medical source offers an opinion on "an issue reserved to the Commissioner, such as whether the claimant is disabled, the ALJ need not accord that opinion controlling weight." *Id.* (citing *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)).  The opinion of an examining source is generally accorded more weight than is the opinion of a source who did not examine the claimant.  20 C.F.R. §

13

404.1527(c)(1).  The opinion of a state agency medical or psychological consultant is reviewed in the same manner as is the opinion of a nonexamining physician or psychologist.  20 C.F.R. §404.1527(e).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion."  20 C.F.R. § 404.1527(c)(2).  Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004) (citing Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)).  If the opinion of a treating source is not afforded controlling weight, an ALJ must apply certain factors in determining what weight to give the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source.  *Wilson*, 378 F.3d at 544 (citation omitted).  Even then, a finding that a treating-source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to controlling weight, not that the opinion should be rejected.  Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *4.

Additionally, the Sixth Circuit has upheld the decision of an ALJ which gave less than controlling weight to a treating physician without specifically analyzing the factors set forth in 20 C.F.R. § 404.1527(c) where the ALJ provided "good reason" for the decision.  *See Infantado v. Astrue*, 263 Fed.Appx. 469, 473-74 (6th Cir.2008).  There is no per se rule that requires an

14

articulation of each of the six regulatory factors listed in 20 C.F.R. § 404.1527(c)(2)-(6). *Norris v. Comm'r*, No. 11-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r*, 394 Fed. Appx. 216, 222 (6th Cir. 2010)).  Moreover, an ALJ's failure to discuss the factors of § 1527(c)(2)-(6) may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [Section 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r*, 195 Fed. Appx. 462, 470 (6th Cir. 2006) (citing *Wilson v. Comm'r*, 378 F.3d 541, 547 (6th Cir. 2004)).

### i.      Dr. Henein

Plaintiff first asserts that the ALJ erred when she assigned little weight to the opinion of Plaintiff's treating rheumatiologist, Dr. Henein. (Docket no. 9-2 at 10.) Plaintiff contends that Dr. Henein's findings are based on "medically-appropriate clinical and diagnostic techniques," which are uncontradicted by evidence in the record, and that the ALJ should have given such opinions controlling weight. (*Id.* at 12). Defendant argues that the ALJ reasonably found that Dr. Henein's opinions were not supported by the record evidence and that they did not warrant controlling weight. (Docket no. 11 at 6.)

The ALJ conducted a particularly thorough analysis of Dr. Henein's opinions:

> Dr. Henein's conclusions are not fully supported by the [Plaintiff's] treatment records. The [Plaintiff's] treatment records show that the [Plaintiff's] condition has improved with treatment justifying a greater residual functional capacity than indicated in the Multiple Impairment Questionnaire. For example, Dr. Henein, conducted a neurological examination of the [Plaintiff] on February 10, 2010 (Exhibit 1F, pp. 4 - 5 and 2F, pp. 35 - 36). The [Plaintiff's] muscle power was

15

reported as "normal" and her reflexes were found to be equal. X-rays of her hands showed no evidence of erosion or damage and x-rays of her feet showed no evidence of erosions (Exhibit 1F, pp. 11). There was no evidence of arthritic changes, except mild, early arthritis of the first metarsal phalangeal joints bilaterally. X-rays of her bilateral hips were completely normal. Dr. Henein found that the [Plaintiff's] lower and upper extremities were grossly intact. The [Plaintiff] demonstrated negative Tinel's sign bilaterally. She was diagnosed with "mild" Raynaud's bilateral hands. It was reported that she has "[s]light" swelling of the proximal interphalangeal joints of her bilateral hands and "mild" decreased range of motion of her bilateral wrists with tenderness on the wrist. It was reported that she was in "no acute distress." She demonstrated marked tenderness over the bilateral elbows and marked tenderness on squeezing the metatarsal phalangeal joints of the bilateral feet. She demonstrated some pain on motion of the right knee. An injection of Kenalong was given.

In a follow up visit of March 15, 2010, Dr. Henein reported that the [Plaintiff] has "[m]arked improvement in the tenderness and the swelling of the bilateral hands and bilateral feet (Exhibits 1F, p. 2 and 2F, pp. 31 and. 33). The [Plaintiff] stated that she did not want to be on Methotrexate. The [Plaintiff] has a complaint of bilateral foot pain on March 22, 2010 (Exhibit 2F, p. 1). She has a complaint of bilateral hand pain at a visit of January 6, 2010 (Exhibit 1F, p. 2). On May 17, 2010, the [Plaintiff] is reportedly back to work, working four days a week, on her feeet right hours a day, doing a "lot of heavy lifting" and has only "[m]inimal synovitis in the hands and wrists (Exhibits 1F, p. 1 and 2F, p. 30). On July 20, 2010, Dr. Henein reported that the [Plaintiff's] feet are "better" and the "orthotics actually make her feet better (Exhibit 2F, p. 29 and 7F, p. 3). On October 25, 2010, Dr. Henein reported that the [Plaintiff] is "doing okay" (Exhibit 7F, p. 2). On May 4, 2011, Dr. Henein reported that the [Plaintiff] started working a new job three days a week (Exhibit 7F, p. 1).

The undersigned assigns little weight to the opinion of Dr. Henein as she has had a very short relationship with the [Plaintiff]. The [Plaintiff] first met Dr. Henein in February 2010 and while her opinion pertaining to the [Plaintiff's] abilities was rendered in March 2010 after a total of only five visits. As a result, Dr. Henein's opinion is not given controlling weight even thouh it is the opinion of a specialist, given the very short relationship with the [Plaintiff].

(TR 67.) There is no dispute that Dr. Henein was Plaintiff's treating rheumatologist. (*See* docket no. 7-2.) Thus, her opinion is entitled to complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. The ALJ assigned little weight to the Dr. Henein's opinion because she had a very short

16

relationship with Plaintiff. (Docket no 7-2 at 67.) And she further notes that Dr. Henein's conclusions are not fully supported by the Plaintiff's treatment records. (*Id.*)

In support of her argument, Plaintiff contends that "[i]f the treating physician's opinion is well supported and there is no contradictory evidence, there is no basis on which the [ALJ], who is not a physician, could refuse to accept it. (Docket no. 9-2 at 12; *citing Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006).) Plaintiff further notes that even if the ALJ is not required to grant Dr. Henein's opinions controlling weight,

> [w]hen a treating source's opinions are not controlling they "are still entitled to deference and *must* be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight."

(Docket no. 9-2 12-13.) Here, though, the ALJ did consider the relevant factors when assigning Dr. Henein's opinions little weight: she noted that they are the opinions of a specialist; she discussed the length and type of relationship that the Plaintiff had with Dr. Henein; and she noted that Dr. Henein's conclusions are not fully supported by, or consistent with, Plaintiff's treatment records. (TR 67.) Therefore, the undersigned finds that the ALJ's analysis of the medical opinions of Dr. Henien is supported by substantial evidence.

## ii.    Dr. Martin

Plaintiff's next contention is that the ALJ erred in rejecting the opinions of her treating podiatrist, Dr. Martin, solely on the basis of the length of the treatment relationship. (Docket no. 9-2 at 13.) Plaintiff is correct. The ALJ discussed Dr. Martin's opinion as follows:

> Ronald Martin, D.P.M., a podiatrist, completed a Multiple Impairment Questionnaire on July 6, 2011 (Exhibit 8F). He stated that the [Plaintiff] was able to sit six out of eight hours and stand up to one hour in an eight-hour day. He did not feel it was necessary or medically recommended for the [Plaintiff] not to sit continuously in a

17

work setting or stand/walk continuously in a work setting. However, he indicated that she has orthotics and shoe type treatment, which she testified has reduced her bilateral feet pain. On December 20, 2010, he indicated that custom orthotics work well with rheumatoid arthritis patients (Exhibit 4F, p. 3). On May 2, 2011, Dr. Martin reported that the [Plaintiff's] tenderness at the midfoot and rear foot was clinically slightly less than the previous examination (Exhibit 10F, p. 1). Further he reported the [Plaintiff's] orthotics were a "good conformity and fit." In addition, he had indicated home stretching techniques to help with her equines. In addition, the [Plaintiff] completed physical therapy (Exhibit 6F). He reported she could occasionally lift up to 20 pounds but that she should never carry any weight. Dr. Martin has a short relationship of treatment for the [Plaintiff]. His first date of treatment of the [Plaintiff] was December 20, 2010 and his last date was May 2, 2011. The undersigned, therefore, assigns little weight to the opinion of Dr. Martin, given his short relationship with the [Plaintiff].

(TR 68). Aside from the short relationship that Dr. Martin and the Plaintiff shared, the ALJ did not discuss any of the relevant factors when assigning the Dr. Martin's opinions little weight. Moreover, there is an apparent inconsistency with the ALJ's opinion and Dr. Martin's medical record regarding whether it is necessary or medically recommended for Plaintiff not to stand or walk continuously in a work setting. (*See* TR 68, 340.) The ALJ stated that "[Dr. Martin] *did not* feel it was necessary or medically recommended for the [Plaintiff] not to . . . stand/walk continuously in a work setting." (TR 68 (emphasis added).) But Dr. Martin indicated "yes," when asked, "Would it be necessary or medically recommended for your patient not to stand/walk continuously in a work setting?" (TR 340.) Thus, the undersigned is unable to determine whether the ALJ misread or misinterpreted Dr. Martin's questionnaire (which would support remand), or whether the ALJ simply miswrote the applicable sentence in her opinion.  For these reasons, the undersigned finds that the ALJ's decision is not based on substantial evidence and recommends that this matter be remanded for proper consideration of Dr. Martin's opinions.

### iii.       Plaintiff's Residual Functional Capacity

18

Plaintiff's third contention is that the ALJ failed to provide sufficient rational for her RFC finding. (Docket no. 9-2 at 14.) An ALJ's determination of a plaintiff's RFC must be based on the medical opinions of a qualified physician. Plaintiff contends that "[t]he ALJ here did not cite to any specific medical or non-medical findings that are consistent with a sedentary RFC other than her own interpretation of the medical findings." (Docket no. 9-2 at 14.) Defendant contends that "the ALJ's determination of a claimant's residual functional capacity is a legal decision rather than a medical one" and that "the ALJ did not improperly assume the role of a medical expert by assessing" the evidence before rendering a RFC. (Docket no. 11 18-19.)

The ALJ found that

> [w]hile the [Plaintiff's] condition results in some limitations in her ability to perform work-related activities, they are not so severe as to be disabling. Indeed, the records show that [Plaintiff] has been treating for those conditions for several years and managed to maintain employment throughout that period of time. This, coupled with the [Plaintiff's] separation from employment due to layoff, rather than because of her arthritic condition, indicates that this is not a totally disabled [Plaintiff], such that she is entitled to disability benefits.

(TR 68.) An examination of the ALJ's decision reveals that she considered all of the evidence to which Plaintiff cites. (*See* TR 65-68.) Moreover, there is no mandate that the ALJ discuss all of the evidence of record. To the contrary, "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r.*, 167 Fed. Appx. 496, 507-08 (6th Cir. 2006) (quoting *Loral Def. Sys-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)).

Specifically, 20 C.F.R. § 404.1527(a) defines sedentary as follows:

> (a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain

19

amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1527(a). Here, as the ALJ discussed, Dr. Henein reported that

. . . [Plaintiff] can only sit for a total of one hour in an eight hour day, stand for a total of one hour in an eight hour day, should not sit continuously, needs to sit/stand every 30 minutes, [and] needs to avoid standing and walking continuously. . . .[Plaintiff] is able to lift and carry up to five pounds frequently and 10 pounds o c c a s i o n a l l y .

(TR 67.) And Dr. Martin reported that "[Plaintiff is] able to sit six out of eight hours and stand up to one hour in an eight-hour day. . . . [Plaintiff can] occasionally lift up to 20 pounds but [] she should never carry any weight." (TR 68.) Thus, the ALJ's finding of a sedentary RFC is consistent with the medical records and opinions of both Dr. Henein and Dr. Martin. (*See* TR 299-300; 339-340.) Therefore, the undersigned finds that the ALJ's RFC determination is supported by substantial evidence.

## VI.      CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Summary Judgment (docket no. 9) should  be GRANTED IN PART AND DENIED IN PART and Defendant's Motion for Summary Judgment (Docket no. 11) should be DENIED. This matter should be remanded pursuant to 42 U.S.C. § 405(g) for consideration of the medical opinions as discussed herein.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard*

20

*v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: July 22, 2014             s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: July 22, 2014             s/ Lisa C. Bartlett
                                 Case Manager

21